22-9583 Kuntz v. FAA. Mr. Mansfield, you may proceed. Thank you very much. May it please the court and counsel. Again, my name is Robert Mansfield. I'm here on behalf of Neil Kuntz. With me at counsel table is Megan Garrett and also with me in the gallery is the Kuntz family. Your Honors, we believe the agency decision was incorrect in several respects. First, the Associate Administrator erred in determining that Salt Lake City was not in violation of the grant assurances. One, for failure to assure that adequate protection was in place for the airspace above the Kuntz property and for Salt Lake City's failure to reimburse the Kuntz's for their attorneys fees litigation costs as a result of their abandonment of the eminent domain proceeding. First, we do not believe that the decision that Salt Lake City fulfilled the grant assurance is the ruling is arbitrary and capricious and unsupported by substantial evidence. The primary issue here is whether the state court action should or should not have been considered by the Director and the Associate Administrator. Let me give you a little background if I may on that. An eminent domain action was originally filed by Salt Lake City in 2007 to acquire an avigation easement over the Kuntz property and the Kuntz property lies just to the south of the Tooele Valley Airport. This is an airport. It's controlled by the Salt Lake City Airport Authority but is actually in the next county over to the west so not within Salt Lake City's jurisdiction. What do you do with our case in Arapaho? Yes. I said the Colorado Supreme Court's decision had no impact on the FAA and its administrative decisions. Sure and I think Arapaho is distinguishable on several grounds. First, in Arapaho the Airport Authority, Arapaho County Airport Authority tried to make binding on the FAA the determination by the FAA that there was not a violation of the grant assurance and as this court found that the Colorado Supreme Court decision could not control the supremacy clause barred consideration of that or the binding effect of that. Well that makes sense doesn't it? Well it does make sense because in Arapaho it does control how the protection, how the FAA goes about protection of the airspace here. In this case, how I think this is different, you have Salt Lake City Airport Authority who was an intervener in this action took the position that in order to comply with Grant Assurance 20 and 21 that it was seeking the airport overlay zones through Tooele County and what they stated was that their efforts to obtain the airport overlay zone was promising. Now I think how the state action applies here and this is how it's different from Arapaho is I think that is binding on Salt Lake City and Salt Lake City should be a stopped from asserting that in order to comply with the grant assurances that it could pursue airport an airport overlay zone and in fact throughout the course of the eminent domain proceeding Salt Lake City explicitly took the position before the court that it was bound by the grant assurances specifically mentioned the grant assurances and there was bound by those grant assurances and is required to pursue an eminent domain action. What's the status of the eminent domain action? So what has happened is and that goes into Grant Assurance 35 so the eminent domain action was dismissed by the District Court of Tooele County for Mr. Kuhn's motion over the city's objection. That is correct. It was dismissed for failure to comply with the pre-filing conditions that the Utah Code requires before an eminent domain action can proceed. That then went up to the Utah Appellate Courts that a decision of the District Court was affirmed. During the pendency of the appeal and even subsequent to the appeal Salt Lake City again passed another resolution authorizing the use of the power of eminent domain to acquire the abrogation easement over the Kuhn's property. Even went so far as to have an appraiser. But nothing was filed. Nothing was filed. They chose not to file and they based on that what Salt Lake City then said that they undertook efforts to obtain an airport overlay zone over the Kuhn's property. First they did so through Tooele County. That was rejected by Tooele County. Second of all, a new city was incorporated. And there's a pending inverse condemnation? There is a pending inverse condemnation. And that was filed by the Kuhn's family? That is correct. What's the status of that? That is proceeding now. We're in the middle of expert discovery. No trial date has been set but that that matter is proceeding. Well isn't that your remedy? Well that certainly is a remedy but also the Utah law is clear as is federal law that a landowner should not be required to bring an inverse condemnation suit in order to enforce a government entity's taking of private property. Well but here I mean the FAA was not a party to any of the litigation. They were not a party, that is correct. And the FAA has determined after the Utah case they readjusted their plans and they were able to put in the what's it called the land plan? The airport layout plan? Yes and they were able to put in the technology that they wanted without the Kuhn's property. Well that is not correct. And now the airport layout plan which does not reference the Kuhn's property as a property that is required to be taken. Now under Grant Assurance 20 it states that Salt Lake City, it says it, the recipient of the federal funds will take appropriate action to assure that such terminal airspaces is required to protect visual operation. Grant Assurance 20 was not part of your action before the director. I think it was now. Well it wasn't named it what you never said Grant Assurance 20 right? No Mr. Kuhn's filed the the complaint there was a pro se complaint. No grant assurance whatsoever was mentioned by number not 35, not 20, not 21. But I think certainly the complaint implicates both 20, 21, and 35. And the only reference to a grant agreement or grant assurance is in the plural on page 1 which this is record AR 004. I am filing a formal complaint against Mr. Allen McCandless and Salt Lake City Airport, Salt Lake City agreements going on. Here under Grant Assurance 20 and I think 21 you're talking about a proposed flagpole right? Well not not not that that that is one issue that's not really the whole issue. Well there's so what it is is this. Well I'm right about those two things. Well those two things would would be obstacles that the FAA and Salt Lake City has sought to remove. Okay let me focus on you on those for just a moment. Those two obstacles are they on Mr. Kuhn's property? They are not on Mr. Neal Kuhn's property they are on his family's property which adjoins it. But it's not on his property? No no that is very true it is not on his particular property. The grant excuse me the action does not limit a complaint under part 16 to only discuss what is only on that person's property. All it requires is that he be an affected person and Mr. Kuhn's clearly is an affected person. The problem here isn't necessarily the flagpole or the tree as well. On Mr. Kuhn's property itself because of the slope of the abrogation easement would prevent development on his property. This is a slope that's 16 feet I believe at the northern end of the entirety of the Kuhn's property and then goes up from there. But this would restrict development also on Mr. Neal Kuhn's individual property. And that that developmental restriction is the nature of your inverse condemnation action? That is and the inverse condemnation action is brought not just by Mr. Neal Kuhn's but also his mother and his father who passed away. The other three the other lots within this Kuhn's subdivision are owned by them. Well the the airport's been operating with this you know navigate the navigation system since what 2008? That is correct. Without without an easement and presumably the FAA's made a determination that the airport can be safely operated without acquiring the Kuhn's property. How do you respond to that finding by the director of the FAA and you know what do we do about that? And that is not correct. It was not it was operating with the abrogation easement in place. Salt Lake City obtained an order of occupancy from the trial court which gave them the restriction. The same restriction is sought by the abrogation easement. Now the formal abrogation easement wasn't declared by the court as being transferred. But there is no there is no abrogation easement. The same restrictions of the abrogation easement were the subject of the order of occupancy. The order of occupancy sought the restriction on the Kuhn's property which mirrored the proposed that sought abrogation easement. Well aren't those two different things? It gives them the temporary right during dependency of the case. An order of occupancy is good during dependency of litigation. Which case? The original eminent domain case that has now been dismissed. So there is no order of occupancy. So the order of occupancy went away when that case was? It did. So at the moment there's no order of occupancy and there's no abrogation easement. And there is no protection over the Kuhn's property. But Salt Lake City certainly has taken the position that they can comply with the grant assurances by getting an airport overlay zone or some other method. But that. And the FAA approved that, correct? They did not approve that. They did not. The director made the determination was upheld by the associate administrator. What legal duty did the director violate that's the subject of this appeal? If you could summarize that. Certainly. I feel like we're wandering around. Focus me on what the FAA did to your clients. The FAA, the director should have considered the state court action where Salt Lake City itself took the position that under the grant assurances it was required to obtain an abrogation easement in order to meet the grant assurances. Before the director, Salt Lake City took the position that no, it was not required to do that. It took the 180 degree position and said it could comply with the grant assurance by attempting to get an airport overlay zone. The only evidence before the director, and this is where I believe there's not substantial evidence, is that all Salt Lake City said was that it was promising that it could obtain the airport overlay zone. In the number of years. What if the FAA disagrees that an easement is necessary? The city might want an easement for a variety of reasons. Not just for safety. I assume part of your inverse condenation injury would be noise, which wouldn't necessarily be a safety hazard for the operation of the airport. The eminent domain could cover a lot of topics beyond airport safety. It's not really, it doesn't have to acquiesce in every eminent domain. No, no. Under the grant assurance. Certainly it does not, but what the FAA has determined is it can be done in, I mean, a taking of the entire property, a navigation easement, or an airport overlay zone to protect it would all be appropriate methods in order to protect the airspace over the Coons property. Where the director and the associate administrator erred is an airport overlay zone has been rejected and is not possible. Salt Lake City does not have the authority to enact that as though this were property within the municipal boundaries of Salt Lake City. That not being a possibility, it leaves two alternatives to comply with grant assurance 20 and 21, which is navigation easement or a total take of the property. That is where I think the director erred. In this case, although an airport overlay zone may generally be a possibility, it is not possible here to amend. But the remedy you're seeking is attorney's fees under grant assurance 35. That would be a second issue. Yes, we're also, because based on Salt Lake City's abandonment. Do you want the court to order the FAA to order Salt Lake City to proceed with eminent domain? Either to proceed with eminent domain or to reimburse the Coons for the attorney's fees they incurred as a result of Salt Lake City's abandonment of the eminent domain action. And is it your position that the airport's being operated unsafely because of the slack of condemnation? It is. Okay. Thank you. May it please the court, Caroline Lopez on behalf of the FAA. I think it might be helpful to sort of just step back and clarify a few things. As your honors were discussing with counsel for petitioners, the question here isn't what should or shouldn't happen in state court proceedings. The question is whether or not the part 16 question is whether or not FAA reasonably determined on the record before it that the city had violated its grant assurances to the FAA or obligations to the FAA. And the answer to that is no, as confirmed by the prior discussion. The best citation for that is AR 318, which is one of the property maps in the airport layout plan. And as the associate administrator explained, that really lays out and that map and a series of other maps in the airport layout plan that sort of go through what is the runway protection zone? What are the slopes that airplanes need to depart and come back safely? Those did show a variety of properties, which in the FAA's opinion did have to be acquired and or were already acquired for. And this is the discussion of this is that AR 562 parcels adjacent to the airport that had to be acquired for approach protection, missed approach, aeronautical and future developments and have received AIP funds. And petitioner's property just wasn't one of those. And that really answers the entire question here. And as your honors were discussing. Are you saying that an easement acquisition was not required under the applicable property plan airport overlay zone? So I want to sort of be careful to pull apart those two things, because I do think those are sort of two different alternatives. So there are some things that are sort of so integral to airport safety. So if your property is within the runway protection zone, then it has to be acquired before you can proceed with expanding the runway in that manner, for example. Other things like the types of things covered under Grant Assurance 21, which is about compatible land use to sort of go to your honors questions about noise compatibility. Those things the FAA says you sponsor airport sponsors have a choice. They can either try and get an easement or sort of own it, get the property outright, or they can pursue a variety of other methods. And whereas here, the airport sponsor doesn't have direct zoning authority. It's enough under FAA authorities for them to be making reasonable efforts to do that. And I do just want to point out here, this is outside of the record because it's a pretty recent development. But, and I, and, I mean, if it's outside of the record, we probably shouldn't know it. It just has to do with the zoning update and is in response to the, it is in response to something that came up in the opening, but I'm happy to also not discuss it. Well, if we can take judicial notice of it, it's fine otherwise. It's just that currently the Utah state code has been updated to require an airport zoning overlay, including in areas like this. But your honors are, we don't think anything turns on that because the actual FAA authorities say that you just have to be making reasonable efforts. And so we're perfectly happy for the court to not take judicial notice of that. What do we do with Salt Lake's admission that it needed the property, Kunz's property, to operate the airport safely? So that really has to do with the associate administrator. The associate administrator, of course, did not ignore the state court proceedings. They just, the associate administrator explained why those proceedings weren't persuaded. They are, of course, not binding under this court's precedent in Arapaho and explained why they weren't persuasive. And the reason they weren't persuasive is because the parties were operating under a mistaken factual assumption. And that factual assumption was that, and this is going to sound, my apologies, it's going to sound very technical, was that you needed a 34 to 1 slope for approach and departure, but actually in looking at the airport layout plan for sort of current uses of the airport as opposed to potential future uses, you only need a 20 to 1 slope. And in layman's terms, a 20 to 1 slope lets the planes fly higher coming in and out. And so that's why, while an navigation easement might have been needed if it were, in fact, factually true that a 34 to 1 slope was required, it was not needed under a 20 to 1 slope. And that sort of, you know, really underscores why Arapaho came up. One of the reasons Arapaho came out the way that it did, because you really need the agency expert to be taking a look at what's happening. And that's really what's laid out in the airport layout plan, what is and is not required. Is it your understanding that grant assurance 20 and 21 were properly before the FAA, the director? No, Your Honor, and thank you for the opportunity to respond to that. So I do also just want to clarify, because I think it may have gotten a little bit muddied in the oral argument this morning. With respect to grant assurance 20 and 21, they were not only were they sort of never mentioned in the original complaint, but in by contrast, all of this sort of statutory and FAA authorities that were discussed were things that go to this grant 35. So there was just sort of nothing to put the FAA on notice. But also, as Your Honors have underscored, even in front of the associate administrator, the argument was about what was happening to property that Mr. Kuntz's family members owned, but that he did not own. And it's just categorically incorrect that under FAA authorities, that he just has to have an interest in some piece of lands that wouldn't be redressed by the Part 16 proceedings. To the contrary, the FAA regulations state that it has to be somebody, quote, this is 14 CFR section 1623A. Somebody has to be directly and substantially affected by any alleged noncompliance. And that just isn't true with respect to other folks' property. And then similarly, the jurisdictional grant to this court to review such orders, it requires that the person disclose a, quote, substantial interest in an order. And a substantial interest in an order, sort of similar to, you know, really to sort of the Article 3 framework as well, which is that you have to sort of have a concrete interest that would be actually redressed. And sort of whatever happens in other folks' property couldn't change what's happening on his property. And so, sort of, there are a myriad of reasons why the Grant Assurance 20 and 21, we think, fall out of this case. What if he started operating his, or manages his property differently, say, to erect taller buildings or flagpole, launch fireworks, what happens then? So, well, there's sort of a couple of answers to that. With respect to what happens with the FAA, what he would do is file, as they, as happens with the two other properties owned by his family members, a study for the FAA to figure out whether or not it would actually pose a hazard. So there's nothing like that on his property now. And so that sort of just would be a new question for the FAA. And then if he went ahead and erected those properties, and then sort of this is, I will say that this is where sort of it segues into sort of the change in state law. I think my understanding of it is that that would be prohibited under state law now. But, you know, there certainly are circumstances, if things change in the future, that might require different obligations from the city. But it wouldn't sort of apply retroactively, whether or not the city did anything wrong here in terms of its grant assurances. You're not, it isn't your position that if the proposal, the airport is operating consistently with its obligations under Grant Assurance 35, you're not suggesting that that doesn't mean that there is a taking of the value of the Coon's property? That's absolutely right. So we think that those are two entirely different issues. And the question of takings and condemnation proceedings and reverse condemnation proceedings are absolutely for the state courts. But they don't go, the only way they sort of link up to what happens with the FAA and whether or not an airport sponsor has violated its obligations to the FAA comes in. And this is actually a crucial second step, comes in only when the FAA actually disburses federal funds for that acquisition. So, for example, you know, if a state just acquired a property for its own ends that FAA had never said, we think you need to acquire this property as part of the airport layout development plan. You know, it's not, for example, part of the runway protection zone. And FAA said, and, you know, because we didn't really think it was necessary for the airport layout plan, we're not going to disburse federal funds. Grant Assurance 35 just would never come into play because that land effectively has no relationship between the state and the FAA. So it's sort of a two-step process. Let me focus you on the attorney's fees issue for a moment. If the city had been the one to dismiss that case, as I understand it, the director would still say there are no attorney's fees owed because this property was never governed by Grant Assurance 35. Am I understanding? Absolutely, Your Honor. And that just, that goes to what we were just talking about, which is that Grant Assurance 35, because FAA never required them to get an easement over petitioner's property, and FAA has much less disbursed any federal funds for that acquisition, the way Grant Assurance 35 works is it means that an airport sponsor, when seeking federal grant money to reimburse them for that acquisition, has to be able to certify that it has complied with all of the state court condemnation laws. If they withdrew, if they filed a condemnation action and then dropped it, they would necessarily not have received any federal funds to buy it. So it seems like kind of a catch-22 for the property owner that they're never entitled to attorney's fees in an abandoned action because unless they go forward and purchase it, they're never going to have federal funds that are spent to acquire it. So what am I missing? Two responses to that. The first is that it's, so of course, if the city sponsor made false representations about having complied and FAA later found out after disbursing federal funds, that would be a violation of Grant 35. So that's the first answer to that. It's not sort of a totally null set. And federal funds if they abandoned the condemnation action. So that's right, Your Honor, that Grant 35 would not apply there. And here's the unless. Unless the FAA had said, you actually had instructed the airport sponsor that they needed to acquire the land for part of an airport layout plan, such as if it were in the runway protection zone. And we discussed that at page 35 of the brief. It's not as expansive as what petitioner would like Grant 35 to mean, of course, but it does give meaning to Grant 35, Grant Assurance 35. Well, I'm still confused on how the property owner gets the fund, the attorney's fees it's expended in an action for condemnation brought because it is required to acquire the land. But then the city, for whatever reason, abandons that condemnation action, maybe so that they can negotiate for a lower price. I don't know. So in that circumstance, an airport sponsor might be violating more than one Grant Assurance, right? So it might be violating its responsibilities to abide by Grant 35 when it is required to obtain at least an easement over property under the FAA's view. And it might also be violating Grant Assurance 29, which is that airport layout plan Grant Assurance, which lays out the federal requirements. If there are no further questions, we rest on the briefs and ask that the court affirm. Thank you, counsel. If you'll excuse, I don't think there was rebuttal time. Why don't you give, would you care for 60 seconds? Let me make one point. Renee, we'll give you 60 seconds. Thank you. Thank you very much. To follow up on the question of the funding, 49 CFR section 24.101B specifically states that as in quotes, any acquisition, it applies, the Relocation Act applies to any acquisition of real property for programs and projects where there is federal financial assistance in any part of the project cost. It doesn't apply when just, as I read the statute, I think it's quite clear, it doesn't apply only if the monies are being used to acquire that specific property, but if any monies are used within the entire project. Here, there is no dispute that monies, federal monies were used for construction of the ILS system, which necessitated Salt Lake City filing its complaint and seeking the abrogation easement over the Koontz property. I think that goes directly to your question, Your Honor. Otherwise, I think it's very circular and it would just have no application. Could you give me the CFR side again? I wasn't sure.  49 CFR section 24.101B. Thank you. Thank you very much. Thank you, Counselor. Appreciate it. Appreciate the arguments. Counselor excused and the case is submitted.